1
2
3                     **UNITED STATES DISTRICT COURT**
4                     **NORTHERN DISTRICT OF CALIFORNIA**
5                              **SAN JOSE DIVISION**
6

| | |
|---|---|
| LAM RESEARCH CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>DANIEL L. FLAMM, et al.,<br><br>    Defendants. | Case No.  15-cv-01277-BLF<br>Related Case Nos.  16-cv-01578-BLF; 16-cv-01579-BLF; 16-cv-01580-BLF; 16-cv-01581-BLF; 16-cv-02252-BLF<br><br>**ORDER (1) CONDITIONALLY GRANTING JOINT MOTION TO STAY PROCEEDINGS (2) DENYING WITHOUT PREJUDICE MOTION TO DISMISS**<br><br>[RE:  ECF 134] |
| DANIEL L. FLAMM,<br><br>    Plaintiff,<br><br>  v.<br><br>GLOBAL FOUNDRIES U.S. INC.,<br><br>    Defendant. | |
| DANIEL L. FLAMM,<br><br>    Plaintiff,<br><br>  v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | |
| DANIEL L. FLAMM,<br><br>    Plaintiff,<br><br>  v.<br><br>MAXIM INTEGRATED PRODUCTS, INC.,<br><br>    Defendant. | |

| | |
|---|---|
| DANIEL L. FLAMM, | |
|     Plaintiff, | |
|     v. | |
| MICRON TECHNOLOGY, INC., | |
|     Defendant. | |
| DANIEL L. FLAMM, | |
|     Plaintiff, | |
|     v. | |
| SAMSUNG ELECTRONICS CO LTD, et al., | |
|     Defendants. | |

The above-captioned patent infringement actions involve the patent holder, Dr. Daniel L. Dr. Flamm ("Dr. Flamm") who owns patents relating to methods used in the fabrication of semiconductors; the manufacturer, Lam Research Corporation ("Lam") who makes and sells semiconductor fabrication equipment; and a number of Lam's customers including, GLOBALFOUNDRIES U.S. Inc. ("GLOBALFOUNDRIES"), Intel Corporation ("Intel"), Maxim Integrated Products, Inc. ("Maxim"), Micron Technology, Inc. ("Micron"), and Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC (collectively, "Samsung") (collectively together, "customers") who use Lam's products. The Court refers to Lam and its customers, collectively as "chipmakers." Case No. 15-1277 is a declaratory judgment action filed by Lam against Dr. Flamm asserting non-infringement of Dr. Flamm's U.S. Patent Nos. 5,711,849 ("the '849 patent"), 6,017,221 ("the '221 patent"), and RE 40,264 ("the '264 patent") (collectively, the "asserted patents"). The remaining cases are Dr. Flamm's actions claiming infringement of the asserted patents against each of the customers.

Pending before the Court are Dr. Flamm's motion to dismiss Lam's declaratory judgment action and a joint motion to stay by the chipmakers in all of the cases. For the reasons stated

below, the Court CONDITIONALLY GRANTS the joint motion to stay.  As a result, the Court DENIES without prejudice Dr. Flamm's motion to dismiss.  When the stay is lifted, Dr. Flamm may re-notice its motion to dismiss or file a new motion to dismiss.

## I.   BACKGROUND[1]

Dr. Flamm is the owner and inventor of the '849, '221, and '264 patents, which claim methods used in manufacturing semiconductors.  Exhs. A-C to SAC, ECF 52-4-52-6.  Lam designs, manufactures, and sells semiconductor processing tools that are used to fabricate semiconductors.  SAC ¶ 2, ECF 52-8; Ans. to SAC ¶ 2, ECF 66.

Around September 2014, Dr. Flamm's attorneys sent letters to some of Lam's customers accusing them of infringing the patents-in-suit.  SAC ¶¶ 29-30, Ans. to SAC ¶¶ 29-30.  Lam, alleging that it may be required to indemnify its customers, SAC ¶ 47, filed Case No. 15-1277 seeking declaratory judgment of non-infringement on its own part and in regards to its customers.  Dr. Flamm responded by filing a Third-Party Complaint against the customers GLOBALFOUNDRIES, Intel, Maxim, and Micron.  Third-Party Complaint, ECF 50-4.  Dr. Flamm also filed a complaint in the Western District of Texas against Lam's customer Samsung.  Case No. 1:15-cv-00613 (W.D. Tx.) at ECF 1.  The Court severed Dr. Flamm's claims against GLOBALFOUNDRIES, Intel, Maxim, and Micron, ECF 120, and Dr. Flamm filed new complaints against each of those entities, Case No. 15-1578, 15-1579, 15-1580, 15-1581.  On April 22, 2016, the court in the Western District of Texas granted Samsung's motion to transfer the case to the Northern District of California.  Case No. 15-2252, ECF 53.

At the same time the parties were engaging in litigation in the district courts, in August 2015, Lam filed five petitions for *inter partes* review directed to all claims of the '221 and '264 patents.  In January 2016, Lam filed four additional IPR petitions that are directed towards the '849 and '264 patents.   The status of each of the IPR petitions is summarized in the chart below:

---

[1] All citations refer to docket entries in Case No. 15-1277 unless otherwise specified.

| Patent | IPR Request Covering Asserted Claim | Instituted? | Anticipated Date of Final Written Decision |
|---|---|---|---|
| '849 | 2016-00466 | No | |
| '221 | 2015-01767 | Yes | February 24, 2017 |
| '264 | 2015-01759 | No | |
| | 2015-01764 | Yes | February 24, 2017 |
| | 2015-01766 | No | |
| | 2015-01768 | Yes | February 24, 2017 |
| | 2016-00468 | No | |
| | 2016-00469 | No | |
| | 2016-00470 | No | |

Although the customers did not request any of the instituted IPRs or file motions to join them, they have represented that they are willing to agree not to reargue invalidity grounds in the above-captioned cases that the PTAB considers and overrules in final written decisions on the instituted IPR petitions. Reply 1, 3, ECF 138.

## II.  LEGAL STANDARD

A district court has inherent power to manage its own docket and stay proceedings, "including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). A court is under no obligation to stay proceedings pending parallel litigation in the PTAB. *See Aylus Networks, Inc. v. Apple, Inc.*, No. C-13-4700 EMC, 2014 WL 5809053, at *1 (N.D. Cal. Nov. 6, 2014). The factors that courts in this district consider when determining whether to stay litigation are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *PersonalWeb Techs., LLC v. Apple, Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

## III.  DISCUSSION

The parties dispute whether the Court should defer ruling on the motion to stay until Dr. Flamm's motion to dismiss Lam's Second Amended Complaint is resolved. Dr. Flamm argues that it would not be fair for the Court to stay proceedings without resolving the question of

4

whether federal subject matter jurisdiction has been established especially since the motion to dismiss was filed first. Opp. 2-3, ECF 137.  The chipmakers argue that Dr. Flamm's argument overlooks the fact that Dr. Flamm has admitted that regardless of the outcome of the motion to dismiss, subject matter jurisdiction will still exist over Lam's declaratory judgment action. Reply 1, ECF 138 (citing Mot. to Dismiss 4, ECF 64 (noting that "Lam successfully alleges the existence of a case or controversy regarding claim 10 of the '849 Patent…."). As a result, the chipmakers argue that in the interests of conserving judicial and party resources, the motion to stay should be resolved first

       The Court agrees with the chipmakers and finds that in the interests of judicial economy, the motion to stay should be decided before the motion to dismiss.  First, contrary to Dr. Flamm's argument, the Court does not need to resolve the motion to dismiss to determine whether federal subject matter jurisdiction has been established.  By Dr. Flamm's own admission, this Court has subject matter jurisdiction regardless of the outcome of the motion to dismiss.  Mot. to Dismiss 4, ECF 64 ("Lam successfully alleges the existence of a case or controversy regarding claim 10 of the '849 Patent…."). Second, the Court notes that Dr. Flamm also filed a prior motion to stay in Case No. 15-1277 that was pending at the same time as his motion to dismiss.  Yet, Dr. Flamm never argued that the Court should first rule on his motion to dismiss and defer ruling on his motion to stay; Dr. Flamm's new-found concern about ruling on a motion to dismiss before a motion to stay rings hollow.  Accordingly, in the interest of conserving resources and given the fact that Dr. Flamm has admitted subject matter jurisdiction exists, the Court will first rule on the motion to stay.

### A.    Stage of Litigation

       First, the Court looks to the question of whether the litigation has progressed significantly enough for a stay to be disfavored. *See PersonalWeb Techs., LLC*, 69 F. Supp. 3d at 1025.  The chipmakers argue that this case is in its early stages because no significant activities have taken place in this case. Mot. 4-5, ECF 134.  For example, the chipmakers note that no case schedule has been set yet including dates for (1) claim construction briefing and a hearing, (2) Patent Local Rule disclosures, (3) the close of fact discovery, (4) the close of expert discovery, (5) summary

1    judgment, and (5) trial. *Id*. at 5. The chipmakers also note that no documents have been produced
2    and no depositions have occurred. *Id*.

3        Dr. Flamm does not dispute that the case is in its early stages but argues that Case No. 15-
4    1277 was filed in March 2015. Opp. 3, ECF 137. In light of the lack of significant progress, Dr.
5    Flamm argues if the Court were to stay the case, then he should be entitled to conduct limited
6    discovery to provide more detailed infringement contentions to the customers. *Id*

7        The Court agrees with the parties' assessment and finds that this case is in its early stages.
8    As to Dr. Flamm's comment about the lack of progress in Case No. 15-1277, which was filed in
9    March 2015, that happened because of continuances that were sought or agreed to by Dr. Flamm.
10   First, Dr. Flamm glosses over the fact that although the case was filed in March 2015, service was
11   not effectuated until May 15, 2015. ECF 18 at 2. In any event, the Court set an initial case
12   management conference for June 25, 2015, ECF 13, but on May 20, 2015, Dr. Flamm filed a
13   stipulation seeking to continue the case management conference to no earlier than August 13,
14   2015. ECF 18 at 2-3. Consequently, the Court set a case management conference for August 13,
15   2015. ECF 19.

16       After filing two stipulations extending time to respond to Lam's declaratory judgment
17   action, ECF 18, 22, Dr. Flamm filed a motion to dismiss, ECF 24. Thereafter, in light of the
18   pending motion to dismiss, the Court continued the parties' case management conference to
19   November 12, 2015. ECF 34. At that conference, Dr. Flamm informed the Court that he was in
20   the process of serving third-party complaints on the customers and that the Court should wait for
21   the parties to settle the pleadings before setting any dates. *See, e.g.,* Transcript 3:7-18 (Counsel
22   for Dr. Flamm stating, "Until all the players are at the table, it doesn't make a lot of sense to start
23   setting deadlines."). As a result, the Court did not set dates and set a further case management
24   conference for February 18, 2016. ECF .

25       Then, the parties filed a joint motion to continue the case management conference to
26   March 24, 2016. ECF 67. At that conference, the Court discussed its concerns about effectively
27   managing this sprawling action and because of Samsung's motion to transfer pending in the
28   Western of District of Texas, the Court could not yet set dates but scheduled a case management

conference for July 28, 2016. Transcript, ECF 118. By that point, the instant motion to stay had been filed. As a result, Dr. Flamm cannot now complain about the lack of progress in this case when he previously agreed to continuances and extensions. Finally, with respect to allowing Dr. Flamm early discovery, if this case is stayed, the Court sees no benefit in allowing for discovery. Thus, given the early stage of the cases at issue, the first factor weighs heavily in favor of a stay.

### B.     Simplification of Issues

"A stay pending reexamination is justified where 'the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.'" *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 13-CV-04201-WHA, 2014 WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) (quoting *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998)). The chipmakers argue that a stay will simplify the issues in this case because a majority of the asserted claims are subject to IPR proceedings. Mot. 6-8, ECF 134. For the '264 patent, IPR has been instituted on 34 of the 59 claims, including five of the six independent claims and for the '221 patent, IPR has been instituted on 5 of the 7 claims, including the sole independent claim. *Id*. at 7.

Dr. Flamm does not seriously dispute that this case may be simplified pending IPRs but argues that this would only apply to Lam and not to its customers. Dr. Flamm notes that Lam is the only party to file for IPRs and thus will be the only party estopped from challenging the validity of the surviving claims "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." Opp. 4-5, ECF 137. Dr. Flamm argues that the customers are seeking to obtain all the benefit of Lam's IPR petitions without assuming any of the downside associated with filing IPRs. *Id*. at 5. Dr. Flamm argues that if the Court is going to grant a stay, it should be conditioned on the customers agreeing to be bound by the same IPR estoppel provisions. *Id*. In reply, the customers state that they would agree to be bound by any grounds raised by Lam and adjudicated by the PTAB but that a stay should not be conditioned on them agreeing to be bound by any grounds that reasonably could have been raised by Lam. Reply 2-3, ECF 138.

The Court finds that a stay would simplify this action. A majority of the asserted patents,

1   and within each patent, a majority of the asserted claims, including a majority of the independent
2   claims, are under IPR.  *See, e.g.*, *Netlist, Inc. v. Smart Storage Sys., Inc.*, Case No. 13-cv-5889-
3   YGR, 2015 WL 1738192, at *1 (N.D. Cal. April 9, 2015) ("[The] PTAB's determination to
4   proceed with review on the majority of claims—strongly indicates that a stay would simplify the
5   case.").  As to Dr. Flamm's estoppel argument, the Court finds that this issue more appropriately
6   pertains to the Court's consideration of proper conditions to impose on a stay.  Since courts have
7   routinely granted stays where a majority of asserted claims are subject to IPR, this factor weighs in
8   favor of a stay.  *See, e.g.*, *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL
9   6068407, at *2 (N.D. Cal. Nov. 13, 2014).

### C. Undue Prejudice

Third, the Court considers whether a stay would unduly prejudice or present a clear tactical disadvantage to Dr. Flamm.  The chipmakers argue that a stay would not cause prejudice or a tactical disadvantage to Dr. Flamm as Dr. Flamm also sought of a stay all the pending disputes except for his dispute with Samsung.  Mot. 9, ECF 134.  Further, the chipmakers argue that Dr. Flamm is not their competitor and all of the asserted patents have expired, precluding the possibility of irreparable harm.  *Id*.  Dr. Flamm argues that staying this action would unfairly prejudice his ability to protect his intellectual property rights.  Opp. 6, ECF 137.  Dr. Flamm also responds that the reason he did not seek a stay of the Samsung action because that action was poised to move much quicker than the actions pending before this court.  *Id*. at 6.  Finally, Dr. Flamm argues that it would be unfair to stay this case when the customers are not subject to the IPR estoppel provisions.  *Id*.

The Court finds that a stay would not cause undue prejudice or present a clear tactical disadvantage to Dr. Flamm.  He does not argue that he is a competitor of the chipmakers and thus, does not face the prospect of irreparable harm stemming from a delay caused by a stay.  *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, Case No. 13-04513-RMW, 2014 WL 819277, at *5 (N.D. Cal. Feb. 28, 2014) ("Sprint") ("[Because the parties] are not competitors…[Plaintiff] does not risk irreparable harm by defendants' continued use of the accused technology and can be fully restored to the status quo ante with monetary relief.").

8

Second, Dr. Flamm's explanation on why he did not seek to stay the Samsung action glosses over the fact that, as the Court explained *supra* I.A, Dr. Flamm caused the delay in this case by seeking or agreeing to continuations and extensions of deadlines and the case schedule. Finally, as to Dr. Flamm's estoppel argument, the Court finds that is not an appropriate consideration as to whether a stay is warranted but a more appropriate consideration as to what conditions should be imposed on the stay. Accordingly, this factor also weighs heavily in favor of granting a stay.

### D. Summary

After reviewing all of the factors, the Court finds a stay is warranted. The facts that this case is in its early stages, that two out of the three asserted patents are subject to IPR, including a majority of the asserted independent claims, and that there is no undue prejudice, all weigh towards granting a stay. The Court furthers finds that a stay is conditioned upon all customers agreeing to the conditions set forth below. Absent unanimous agreement by customers, there is no benefit to a stay and it will be denied.

### E. Statutory Estoppel[2]

The Court appreciates Dr. Flamm's concern that it would be unfair for the customers to obtain the benefit of a stay without being subject to the statutory estoppel provisions. Without estoppel, accused infringers would have multiple opportunities to assert the same grounds to invalidate a patent and IPRs would have no appreciable effect on simplifying actions. *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, Case No. C-12-4958-PSG, 2013 WL 5513333, at *2 (N.D. Cal. Oct. 3, 2013). In *Sprint*, the Court explained when a party should be subject to estoppel:

> In *Pi–Net,* the court's holding turned on the defendants' level of involvement in the IPR proceedings. If Sprint and IPR petitioners communicate on strategy, Sprint should be bound by the full statutory estoppel provision. If, however, Sprint has no input on the IPR strategy, it should not be precluded from raising arguments that could have been raised in the IPR proceedings. *Id.* At the hearing, Sprint represented to the court that it did not assist the IPR petitioners with any prior art search, that

---

[2] The parties' characterizations of case law in this district surrounding statutory estoppel are not well taken. Dr. Flamm perplexingly cites to a decision in his argument that in a footnote he explains was overturned on a motion for reconsideration. Opp. 5, ECF 5. Meanwhile, the customers fail to discuss the key proposition in *Sprint* and *Pi-Net* that the level of estoppel depends on their involvement with Lam's IPR petitions.

it took no part in drafting the IPR petitions, and that it is not in communication with the IPR petitioners concerning the IPR.

*Sprint*, 2014 WL 819277, at *5. In that case, Sprint represented "that it did not assist the IPR petitioners with any prior art search, that it took no part in drafting the IPR petitions, and that it is not in communication with the IPR petitioners concerning the IPR." *Id*. As a result, the Court found that Sprint should be bound by a weaker estoppel requirement than statutorily required and conditioned a stay on "Sprint's agreement to be estopped only from asserting any invalidity contention that was actually raised and finally adjudicated in the IPR proceedings."

In *Pi-Net*, "Focus and Bridge represented that, while they were notified of the IPR petitions, they had no occasion to see SAP's filings or provide any input on the arguments that SAP presented to the PTO prior to SAP's submission. Presidio represented to the court that it was not aware of SAP's IPR petitions until much later." *Pi-Net*, 2013 WL 5513333, at *2. The Court conditioned the stay on "Defendants' agreement to be estopped from raising any invalidity reference, or combination of references, that was already presented to the PTO in SAPs IPR petitions, including those for which the PTO declined to institute review."

The Court finds the reasoning in *Sprint* and *Pi-Net* persuasive. In this case, although the customers have agreed to not "reargue invalidity grounds here that the PTAB considers and overrules in final written decisions on Lam's IPR petitions," Reply 1, ECF 138, the customers have not told the Court their level of involvement in Lam's IPR petitions. To the extent the customers had input in Lam's IPR petitions, the Court sees no reason why they should not be bound by the same statutory estoppel provisions that apply to Lam. If the customers did not have input, a weaker form estoppel, such as that proposed by the customers, is more appropriate. Thus, the Court will condition the stay based on the customers agreeing to an appropriate level of estoppel.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Based upon the Court's conclusion that all three factors weigh in favor of staying this case and each of the related cases, the Court CONDITIONALLY GRANTS the joint motion to stay.

2. The stay is CONDITIONED on each customer's agreement to the following:

   a. For any customer that had involvement in Lam's IPR petitions, the stay is conditioned on that customer's consent to be estopped from raising any invalidity defense that Lam raised or reasonably could have raised in the IPR proceedings.

   b. For any customer that did not have any involvement in Lam's IPR petitions, the stay is condition on that customer's consent to be estopped from asserting any invalidity contention that was actually raised and finally adjudicated in the IPR proceedings.

3. Each customer shall file a declaration stating its level of involvement in Lam's IPR petitions and its agreement to be bound by the appropriate estoppel condition set forth above. Each customer shall file its declaration and agreement to be bound **on or before August 19, 2016.**

4. In the event that all of the customers agree to these conditions, the stay shall become effectively immediately. If less than all the customers consent by August 19, 2016, no stay will go into effect.

5. If the stay goes into effect, the Court ORDERS the parties to file a joint status report within 21 days of the PTO's final decisions on the IPR petitions.

6. The Court DENIES without prejudice Dr. Flamm's motion to dismiss. If the stay does not go into effect by August 19, 2016, Dr. Flamm simply needs to file a one page notice stating that no stay is in place, and the Court will issue an order on Dr. Flamm's motion to dismiss. If the stay goes into effect, Dr. Flamm may re-notice the motion to dismiss or re-file a motion to dismiss when the stay is lifted.

**IT IS SO ORDERED.**

Dated: August 8, 2016

_____
BETH LABSON FREEMAN
United States District Judge